# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SMITH TRANSPORT, INC., ) | |
|         Plaintiff, ) | |
| ) | CIVIL ACTION NO. 3:06-160 |
| v. ) | |
| ) | |
| TRUCK AND BUS WASH, INC., t/d/b/a ) | JUDGE KIM R. GIBSON |
| TBW, INC., ) | |
|         Defendant. ) | |

## MEMORANDUM OPINION & ORDER

**Gibson, J.,**

## I. Introduction and Procedural Posture[1]

The issue now before the Court is the amount of damages to which Plaintiff is entitled. Plaintiff's Complaint, filed on July 20, 2006, stated claims for breach of contract, unjust enrichment, fraudulent inducement, and breach of various warranties stemming from agreements between the Parties concerning the purchase of a vehicle washing system. Document No. 1. The Clerk of Court entered default against Defendant Truck and Bus Wash, Inc. (hereinafter "TBW" or "Defendant") on October 25, 2006, (Document No. 7) and the Court granted Smith Transport, Inc.'s (hereinafter "Smith" or "Plaintiff") Motion for Default Judgment on January 30, 2007 (Document No. 9). A hearing was held before the Court on March 15, 2007, to address all issues of damages, costs, and expenses. Defendant, whose only participation in this matter has been to waive service (Document No. 4), was not represented at the hearing. After considering the presentation made at that hearing, as well as Plaintiff's memorandum of law regarding damages (Document No. 10), the Court shall award Smith $286,423.64.

---

[1] The factual information recounted in this Memorandum Opinion is taken from Plaintiff's Complaint and the Pre-hearing Brief on Damages; Defendant has made no filings.

1

Plaintiff is an interstate motor carrier that operates several hundred tractor-trailers, which it must maintain in a certain condition to ensure appropriate safety levels and full compliance with state and federal laws. Prior to May 13, 2005, Smith washed its tractor-trailers at an on-site truck wash using six wash-bay attendants. Around that time, a representative of TBW initiated negotiations for the sale of an independent truck- washing system, the TBW 5399 Horizon Combo Brush and High-Pressure Vehicle Washing System (hereinafter "the System"), which Defendant represented would reduce Smith's truck-washing costs in several respects. Specifically, TBW claimed the System would require only two wash-bay attendants and could wash thirty trucks per day at a rate of fifteen minutes per truck. The Parties subsequently executed a sales contract and the System was installed at Smith's facility in Roaring Springs, Pennsylvania, in May 2005. Plaintiff's total purchase price was $229,861.00. According to a financing agreement with Siemens Financial Services, Inc. (hereinafter "Siemens"), Smith was to pay $7,3873.73 per month for thirty-six months, a total of $265,985.28. Smith continues to make these monthly payments.

Shortly after installation, the System failed to perform at the levels expected or warrantied and Defendant's attempts to cure the defect were unsuccessful. Though the System was covered by a one-year warranty, which included the cost of necessary services, TBW eventually failed to even respond to Plaintiff's inquiries. Accordingly, Smith rejected the System under the terms of the sales contract as noncompliant and began taking measures to mitigate its losses. Plaintiff employed additional wash-bay attendants, paid for trucks to be washed at Blue Beacon Truck Wash (hereinafter "Blue Beacon"), a third-party washing service, and hired another third party, Niagara National Corporation (hereinafter "Niagara"), to inspect and evaluate the System. Niagara reported that the System contained $11,700.00 in reusable parts and proposed the installation of a replacement truck wash that would perform at the

2

original specifications at a cost of $156,310.78. Because of this additional cost and the need for further financing, Smith has not procured the additional truck wash.

Having obtained a default judgment, Plaintiff now seeks damages under several different theories. Smith first calculates its expectation interest, or, in other words, its interest in having the benefit of the agreement with Defendant. Document No. 10, pp. 5-7. Such damages seek to "to place the aggrieved in as good a position as would have occurred had the contract been performed," *ATACS Corp. v. Trans World Commc'ns.*, 155 F.3d 659, 669 (3d Cir. 1998) (citation omitted), and, according to Smith, total $291,504.54. Document No. 10, p. 7. This amount represents the damages necessary to give Plaintiff what it bargained for: a fully functioning truck wash financed at a cost of $265,985.28. The calculation includes the $156,310.78 it would cost to have Niagara install a functioning wash system, $50,128.00 paid to the additional wash-bay attendants that the malfunctioning TBW system necessitated, and $85,065.76 spent on Blue Beacon's fees in the same time period. *Id.*

Alternatively, Plaintiff asks for reliance or restitution damages. Reliance interest seeks "to achieve the position that [Smith] would have obtained had the contract never been made." *ATACS*, 155 F.3d at 669 (citation omitted). Such damages in this case include the $135,193.76 Plaintiff reportedly paid to Blue Beacon and the additional wash-bay attendants, as well as the $265,985.28 Smith owes Siemens under the financing agreement for the System. Plaintiff therefore maintains that its reliance damages total $401,179.04 *Id.* at 7-8. Smith claims that such an amount also represents its restitution damages, which would "require the party in breach to disgorge the benefit received by returning it to the party who conferred it." *ATACS*, 155 F.3d at 669 (citation omitted).

Plaintiff also asks for pre-judgment interest on the value of the service that Defendant was to perform. Document No. 10, pp. 9-10. Citing the Pennsylvania Supreme Court's adoption of the

Restatement of Contracts, Smith argues that

> "simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows: where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract . . . interest is allowed on the amount of the debt or money value from the time performance was due."

Document No. 10, p. 9 (quoting Restatement of Contracts § 337(a)). *See also Penneys v. Pennsylvania R. Co.*, 183 A.2d 544, 546 (Pa. 1962) (following § 337). Smith contends that the value of TBW's performance was set by the contract price of $229,861.00 and cites the legal interest rate of 6% set forth in 41 PA. C.S. § 202. Document No. 10, p. 9-10.

## II. Analysis

Litigants under Pennsylvania law need only provide evidence that establishes "with a fair degree of probability . . . a basis for the assessment of damages." *Mass. Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 22 A.2d 709, 714 (Pa. 1941). As the Third Circuit has noted, "the general rule in Pennsylvania, as in most jurisdictions, is that if damages are difficult to establish, an injured party need only prove damages with reasonable certainty." *ATACS*, 155 F.3d at 669. "At a minimum, reasonable certainty embraces a rough calculation that is not too speculative, vague or contingent upon some unknown factor." *Id.* (citations omitted).

Generally, the law of contracts expresses a preference for expectation damages. *ATACS*, 155 F.3d at 669 ("The preferred basis of contract damages seeks to protect an injured party's 'expectation interest.'"). *See also* Restatement (Second) of Contracts § 347 cmt. a (1981) ("Contract damages are ordinarily based on the injured party's expectation interest. . . ."); *Mace v. Atl. Ref. & Mktg. Corp.*, 785 A.2d 491, 497 (Pa. 2000) (citing § 347 for the proposition that "contract damages normally are based on party's expectation interest and put the injured party in a position as if the breaching party had

4

performed as required."). Such damages are typically measured "by the losses caused and gains prevented by defendant's breach, to the extent they are in excess of any savings made possible by nonperformance." *Am. Air Filter Co. v. McNichol*, 527 F.2d 1297, 199 (3d Cir. 1975) (citation omitted).

In certain cases, however, where "recovery based on traditional notions of expectation damages is clouded because of the uncertainty in measuring the loss in value to the aggrieved contracting party," reliance damages can return the parties to the positions they enjoyed prior to contracting. *ATACS*, 155 F.3d at 669. Where "unknown variables cloud a reasonably certain calculation of lost profits stemming from the breach," courts may also turn to the equitable principle of restitution. *Id.* at 671. "Pennsylvania courts will look to traditional principles of equity, such as unjust enrichment or forfeiture, in considering the propriety of restitution damages." *Id.* at 699.

The calculation of damages in this case is not clouded by any great degree of uncertainty. Plaintiff includes under each theory the money paid for additional attendants and third-party truck washing. The only difference between calculations is whether the Court should add to that amount the cost of Niagara's replacement washer or the amount of Smith's financing agreement with Siemens. Awarding Plaintiff the expense it will incur replacing the defective System better comports with the general interest in preserving the benefit of the bargain than would returning the Parties to their *ex ante* positions. Such damages will also have a less severe effect on a Defendant who has been almost entirely absent from this litigation. The Court therefore holds that Plaintiff is entitled to "the losses caused and gains prevented by" TBW's failure to perform.

As the evidence demonstrates, those losses include money spent covering the System's inability to achieve the contract specifications. At the March 15 hearing, Plaintiff offered the testimony of

5

Jeffrey Musselman, Smith's Vice President of Maintenance (hereinafter "Musselman"), who verified payroll records for wash-bay attendants indicating that, from August 2005 to December 2006, Plaintiff paid $50,128 more than it would have if the System had operated at the contractually specified levels, a monthly average of $2,948.71. The Court multiplies this average by eighteen, representing the time between August 2005 through the entry of judgment on January 30, 2007. TBW's breach has therefore caused Smith $53,076.78 in additional payroll expenses. Musselman also confirmed that between July 2005 and December 2006, the period during which the System should have been fully functioning, Smith has spent an average of $4,670.32 per month sending tractor-trailers to Blue Beacon for washing. It is therefore reasonably certain that during the nineteen-month period from July 2005 to January 2007, Smith accrued approximately $88,736.08 in expenses with Blue Beacon.

Smith's losses also include the amount it will cost to replace the System with a similar washing mechanism from Niagara. The price quote given Plaintiff indicates the overall cost of that replacement to be $156,310.78. However, that quote apparently does not include the $11,700 worth of equipment that Niagara proposes to salvage from the truck wash that Defendant installed. Document No. 10-2, pp. 26-29. The net cost to Plaintiff to replace the System is therefore $144,610.78. Combined with the payments to additional wash-bay attendants and Blue Beacon, Smith's total losses equal $286,423.64. Because there is no indication that TBW's breach prevented any gains, the remaining issue is whether the Court should also award Plaintiff prejudgment interest.

According to the Restatement, "If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled." Restatement (Second) of Contracts § 354(1). In the Third Circuit, the victims of breach are entitled to

prejudgment interest in four scenarios:

> (1) a defendant commits a breach of a contract to pay a definite sum of money; or (2) a defendant commits a breach of contract to render a performance the value of which in money is stated in the contract; or (3) a defendant commits a breach of contract to render a performance the value of which is ascertainable by mathematical calculation from a standard fixed in the contract; or (4) a defendant commits a breach of a contract to render a performance the value of which in money is ascertainable from established market prices of the subject matter.

*Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 941, 943 (3d Cir. 1984). "The burden of proof lies with the party seeking prejudgment interest under a contract." *Id.* at 944.

Smith requests interest on the System's contract price—$229,861.00—which it contends represents the value of TBW's performance. Document No. 10, pp. 9-10. However, the full contract price is an inadequate measure of the value of partial performance. *Hussey Metals Div. of Copper Range Co. v. Lectromelt Furnace Div., McGraw Edison Co.*, 417 F. Supp. 964, 968-69 (W.D. Pa. 1976). In *Hussey*, the plaintiff purchased for $387,000 a copper furnace that was subsequently plagued with consistent malfunctions, creating various replacement and service costs. *Id.* at 968. The court could not consider plaintiff's damages, which a jury had calculated to be $316,000, to represent a definite sum upon which interest could be calculated, in part because, "[w]hile the furnace unquestionably did not conform to the contract (as the jury so found), its use was without doubt of considerable benefit to plaintiff." *Id.* at 969.

While the System was probably not of considerable benefit to Smith, there is no evidence that it has completely failed to perform, and partial operation in this case frustrates the measure of damages just as it did in *Hussey*. Because Smith has presumably derived some benefit from its contract with Defendant, the contract price does not help the Court appraise the value of TBW's nonperformance. Because Plaintiff does not offer any other method for calculating that value, the Court has no

mathematical equation, contractual provision, or established market price that would bring this case within one of *Black Gold*'s four scenarios and trigger a right to prejudgment interest. *Cf. Black Gold*, 730 F.2d at 944-45 (declining to award prejudgment interest where plaintiff offered no evidence to carry their burden); *Peterson v. Crown Fin. Corp.*, 661 F.2d 287, 293 (3d Cir. 1981) ("The court is thus obligated to award simple interest at the statutory legal rate only in those circumstances in which the plaintiff proves that the defendant breached a promise to pay a definite sum of money, or render a performance the value of which is ascertainable with exactitude." (citations omitted)).

Where the Court need not award mandatory prejudgment interest under *Black Gold*, however, Pennsylvania law allows for the recovery of discretionary interest. *Frank B. Bozzo, Inc. v. Elec. Weld Div. of Ft. Pitt Div. of Spang Indus.*, 498 A.2d 895, 898-900 (Pa. Sup. Ct. 1985) ("[E]ven where the breach was not the failure to pay a fixed or ascertainable sum, still the buyer may be entitled to recover 'compensation for delay.'"(citing *Marazzo v. Scranton Nehi Bottling Co., Inc.*, 263 A.2d 336, 337(Pa. 1970))). The Third Circuit has set out four factors to guide this discretion: "(1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." *Feather v. United Mine Workers*, 711 F.2d 530, 540 (3d Cir. 1983). The burden to make this showing, however, remains Plaintiff's, and Smith has presented no argument on this point. The Court therefore finds that any award of prejudgment interest would be inappropriate. *Vanalt Elec. Constr., Inc. v. Selco Mfg. Corp.*, No. 03-6741, 2005 U.S. Dist. LEXIS 33151, at **7-8 (E.D. Pa. Dec. 15, 2005) (refusing to award discretionary prejudgment interest where no argument was made in its favor); *Montgomery County v. Microvote Corp.*, No. 97-6331, 2001 U.S. Dist. LEXIS 8737, at **15-16 (E.D. Pa. June 25, 2001) (finding that the "'the mere fact [a plaintiff has]

the use of the money rightfully paid it under the terms of the contract does not indicate that it was unjustly enriched.'" (quoting *Krain Outdoor Displays, Inc. v. Tenn. Cont'l Corp.*, No. 85-2052, 1986 U.S. Dist. LEXIS 21740, at *12 (E.D. Pa. Aug. 12, 1986))).

### III. Conclusion

The Court thus concludes that Smith has incurred the following damages as a result of Defendant's failure to perform according to the Parties' contract: 1) $53,076.78 in additional payroll expenses; 2) $88,736.08 in third-party truck-washing fees; and 3) the $144,610.78 necessary to replace the defective TBW system with a truck washer capable of performing at the levels specified in the original sale contract. The total damages to which Plaintiff is entitled is therefore $286,423.64.

An appropriate Order follows.

**AND NOW**, this 25th day of April, 2007, **IT IS HEREBY ORDERED** that under the judgment this Court entered against Defendant Truck and Bus Wash, Inc., t/d/b/a/ TBW, Inc., on January 30, 2007, Plaintiff Smith Transport, Inc. is entitled to damages in the amount of $286,423.64, which represents Plaintiff's expectation of the bargain for which it contracted with Defendant. This amount includes:

**1)** $53,076.78 in additional payroll expenses;

**2)** $88,736.08 in third-party truck-washing fees; and

**3)** $144,610.78 necessary to replace the defective TBW system.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**